**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF AMERICA, | CASE NO. 2:25-cv-304 |
| Plaintiff, | |
| vs. | |
| HYDRO VAC SERVICES, LLC d/b/a GROUNDBREAKERS HERO FLEET LLC, DOUGLAS TAYLOR, HOOSIERVAC, LLC AND HOOSIERX, LLC. | |
| Defendant. | |

**SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Selective Insurance Company of America ("Selective") seeks a declaratory judgment that it is not obligated under the terms of an insurance policy to defend or indemnify defendant Hydro Vac Services, LLC d/b/a Groundbreakers, Hero Fleet LLC ("Groundbreakers") against the claims asserted against it in an underlying civil action pending in the United States District Court for the Northern District of Indiana, Lafayette Division.

**NATURE OF THE ACTION**

1. This is an action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking a judicial declaration concerning coverage under an insurance policy issued by Selective.

2. Selective issued an insurance policy bearing Policy No. S 2624437 to Hydro Vac Services, LLC d/b/a Groundbreakers Hero Fleet LLC with stated effective dates from February 15, 2024, to February 15, 2025 (the "Selective Policy"). A true and accurate copy of the Selective Policy is attached hereto as **Exhibit 1**.

3.    Groundbreakers has sought coverage under the Selective Policy for a lawsuit brought against it and other non-insured defendants by HoosierVac, LLC ("HoosierVac") in the United States District Court for the Northern District of Indiana, entitled *HoosierVac, LLC v. International Union of Operating Engineers Local 103, et al.,* Case No. 4:26-cv-00013 (the "Underlying Lawsuit"). A true and accurate copy of the operative Third Amended Complaint (the "TAC") is attached hereto as **Exhibit 2**.

4.    Groundbreakers notified Selective of the Underlying Lawsuit on April 7, 2025 and requested that Selective provide coverage under the Selective Policy against the claims asserted in the Underlying Lawsuit. A true and accurate copy of Groundbreakers' notification to Selective is attached hereto as **Exhibit 3**.

5.    By letter dated June 16, 2025, Selective explained that the Selective Policy does not provide coverage for the claims asserted in the Underlying Lawsuit and, thus, Selective did not have an obligation to defend or indemnify Groundbreakers against the claims asserted by HoosierVac and HoosierX, LLC in the Underlying Lawsuit. Nevertheless, Selective has offered to presently fund the Groundbreakers' defense of the Underlying Lawsuit, subject to a full reservation of rights, including the right to bring this declaratory judgment action and to terminate funding the defense and recoup defense costs. A true and accurate copy of Selective's June 16, 2025 letter is attached hereto as **Exhibit 4**.

6.    An actual and justiciable controversy exists between the parties. Groundbreakers contends that Selective is obligated to defend and indemnify it against the claims asserted in the TAC. Selective, however, contends that it has no such obligations under the Selective Policy because: (a) the claims asserted in the TAC do not potentially fall within the scope of coverage provided by the Selective Policy, (b) the pertinent facts that form the basis for the claims asserted

in the TAC occurred outside the effective policy period of the Selective Policy, and (c) various exclusions of the Selective Policy apply to exclude coverage for the claims.

## PARTIES

7.     Plaintiff Selective is an insurance company incorporated under the laws of the State of New Jersey and with its principal place of business in New Jersey. Accordingly, for purpose of diversity jurisdiction, Selective is a citizen of the State of New Jersey.

8.     Defendant Groundbreakers is a limited liability company formed under the laws of the State of Indiana, with its principal place of business located in Indianapolis, Indiana. Andrea Sloan is the President and sole owner/member of Hydro Vac Services, LLC and resides within the State of Indiana. Accordingly, for purpose of diversity jurisdiction, Groundbreakers is a citizen of the State of Indiana.

9.     Defendant HoosierVac is a limited liability company formed under the laws of the State of Indiana, with its principal place of business located in Camden, Indiana. Lauren Mullins is the sole owner of HoosierVac and resides within the State of Indiana. Accordingly, for purpose of diversity jurisdiction, HoosierVac is a citizen of the State of Indiana.

## JURISDICTION AND VENUE

10.     Jurisdiction over this action exists by virtue of 28 U.S.C. § 1332(a), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

11.     This Court has the authority and jurisdiction to declare the parties' rights and obligations as requested herein pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     This Court has personal jurisdiction over the Defendants because Groundbreakers' and HoosierVac's principal places of business are in the State of Indiana, respectively, and the

circumstances giving rise to this action concern underlying conduct that occurred in Indiana and an underlying lawsuit pending in this District.

13. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(1) because the Defendants reside in this District. Venue is further appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this controversy occurred in this District.

## FACTUAL ALLEGATIONS

### The Underlying Lawsuit

14. HoosierVac and HoosierX, LLC initiated the Underlying Lawsuit by filing a complaint against numerous non-insured defendants in Indiana State Court, Carroll Circuit Court on November 13, 2024 (the "Original Complaint"). The Original Complaint asserted the following claims: Count One – Antitrust; Count Two – IC 22-6-6, Indiana Right to Work Statute; Count Three – Breach of Contract; and Count Four – Defamation and Other Unlawful Acts. A true and accurate copy of the initial complaint is attached hereto as **Exhibit 5**.

15. The Original Complaint alleged that, as part of the anti-trust/anti-competition conspiracy, one of the non-insured defendants made defamatory statements as early as June 2023.

16. On December 3, 2024, the case was removed to the United States District Court for the Northern District of Indiana.

17. On February 28, 2025, HoosierVac and HoosierX, LLC filed a Verified Second Amended Complaint (the "SAC"). In addition to the other non-insured defendants, the SAC, for the first time, named Groundbreakers and Douglas Taylor (Director of Operations at Groundbreakers) as defendants to the suit.

18. The SAC asserted the following claims against Groundbreakers and Mr. Taylor: (1) Violation of Section 1 of the Sherman Act (15 U.S.C. § 1); (2) Monopolization or Attempted

-4-

Monopolization (15 U.S.C. § 2); (3) Tortious Interference with Contract and *Prospective* Business Relations; (4) Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing (I.C.A. 26-1-1-203 & I.C.A. 26-1-2-719); and (5) "5 § U.S.C.A.a." and "5 § U.S.C.A.a.(i)(1)" – Violation of the Privacy Act. A true and accurate copy of the SAC is attached hereto as **Exhibit 6**.

19.    On May 30, 2025, Groundbreakers and Mr. Taylor filed a motion to dismiss the claims against them in the SAC.

20.    On December 29, 2025, the Court dismissed the SAC in its entirety, without prejudice.

21.    On February 20, 2026, HoosierVac filed its TAC against Groundbreakers and three other non-insured defendants, which as of the time of this filing is the operative complaint in the Underlying Lawsuit. HoosierX, LLC is no longer a plaintiff in the Underlying Lawsuit.

22.    Contemporaneous with the TAC, on February 20, 2026, HoosierVac voluntarily dismissed numerous defendants including Mr. Taylor, who is consequently, no longer a party to the Underlying Lawsuit. The defendants to the Third Amended Complaint are Groundbreakers, K2 Industrial Services, Inc. ("K2"), and two labor union defendants, International Union of Operating Engineers Local 103 ("Local 103") and International Union of Operating Engineers Local 150 ("Local 150").

23.    The TAC asserts only one cause of action against all defendants: Conspiracy to Restrain Trade in Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

24.    The TAC alleges that the Underlying Lawsuit "arises from an unlawful conspiracy, in restraint of trade, among competing hydrovac service providers, K2 and Groundbreakers, and two labor organizations, Local 103 and Local 150, to eliminate HoosierVac as a competitor in the Northern Indiana market for union-signatory hydrovac services." (Ex. 2, ¶ 1.)

25. The TAC asserts that "following HoosierVac's rejection of acquisition attempts by both K2 and Groundbreakers in 2022 and 2023, the Defendants entered into an agreement to engage in a coordinated campaign of retaliation against HoosierVac" that "constitutes a concerted refusal to deal and a group boycott" in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. (Ex. 2, ¶ 1.)

26. Specific to Groundbreakers, the TAC alleges that in "early 2022," Groundbreakers "made an unsolicited offer to purchase HoosierVac," which HoosierVac rejected. (Ex. 2, ¶ 64.)

27. HoosierVac asserts that, during the negotiations related to this unsolicited offer, a representative of Groundbreakers "mentioned that Groundbreakers was seeking to expand its market share, but was experiencing difficulty due to HoosierVac's industry performance," and that the representative "suggested that Groundbreakers and HoosierVac should keep their prices consistent[.]" (Ex. 2, ¶ 65.)

28. The TAC alleges that "[f]ollowing the unsuccessful attempts by Groundbreakers and K2 to acquire HoosierVac's proprietary information and/or the company itself, the Defendants engaged in a swift, coordinated campaign of retaliation designed to destroy HoosierVac's business." (Ex. 2, ¶ 72.)

29. HoosierVac alleges that in connection with the alleged antitrust campaign, "business agents" of the two labor organization defendants, Local 103 and Local 150, "contacted HoosierVac employees and customers and made threats and disparaging statements[.]" (Ex. 2, ¶ 98.)

30. HoosierVac alleges that in June of 2021, Joe Hayden a "a business agent and treasurer of Local 103," arrived at HoosierVac's facility, where he threatened to remove HoosierVac's employees, to subject HoosierVac to payroll audits, and to file a retaliatory

grievance against HoosierVac, all in the presence of three of HoosierVac's employees. (Ex. 2, ¶¶ 54-57.)

31.    HoosierVac alleges that "in September 2021, Corey Lodge—business agent and Financial Secretary of Local 103—recommended to Miller Pipeline [a customer] that it stop using HoosierVac as a service provider because of the company's alleged anti-union sentiment." (Ex. 2, ¶ 59.)

32.    HoosierVac claims that on August 15, 2023, Hayden called HoosierVac's employee, Richard Houston, and made explicit threats of retaliation against HoosierVac "for the purpose of harming HooiserVac's business and the market because HoosierVac refused to disclose proprietary information or otherwise sell to either Groundbreakers or K2."  (Ex. 2, ¶¶ 73-74.)

33.    The TAC does not allege that Groundbreakers made any disparaging statements.

34.    HoosierVac alleges that following the failed acquisition attempts in 2022 and 2023, Jeff Valles, a "business agent" of Local 150, began filing grievances against HoosierVac for failing to "clear" Local 150 members to work in Local 150 territory. (Ex. 2, ¶ 78.)

35.    HoosierVac asserts that since late 2023, Local 103 and Local 150 have filed over twenty grievances against HoosierVac which were allegedly made "for the purpose of harming HoosierVac's business and the market because HoosierVac refused to disclose proprietary information or otherwise sell to either Groundbreakers or K2." (Ex. 2, ¶¶ 81-86.)

36.    The TAC alleges that Groundbreakers actively recruited and hired HoosierVac's employees, whom they have allegedly used "to misappropriate HoosierVac's confidential information and trade secrets—including customer lists, pricing data, and proprietary operational techniques—to unfairly compete against HoosierVac" and "for the purpose of harming

HoosierVac's business and the market because HoosierVac refused to disclose proprietary information or otherwise sell to either Groundbreakers or K2." (Ex. 2, ¶¶ 91-94.)

37.    HoosierVac asserts that the "parallel conduct" of the alleged antitrust activities of the union defendants "in combination with the failed acquisition attempts by K2 and Groundbreakers . . . presents strong circumstantial evidence of an agreement between all Defendants to eliminate HoosierVac from the Northern Indiana union-signatory hydrovac market." (Ex. 2, ¶ 99.)

38.    In the Underlying Lawsuit, HoosierVac seeks (1) damages in an amount to be determined at trial and to be trebled as provided by the antitrust laws; (2) injunctive relief to prevent further anticompetitive conduct; (3) pre- and post-judgment interest; (4) attorneys' fees and costs; and (5) all other just and proper relief.

**The Selective Policy**

39.    Selective issued a commercial insurance policy, bearing Policy No. S 2624437 to Hydro Vac Services, LLC DBA Groundbreakers Hero Fleet LLC, with stated effective dates from February 15, 2024 to February 15, 2025.

40.    Subject to, among other things, its terms, conditions, retentions, limitations, and exclusions, the Selective Policy's Coverage A ("Coverage A") provides in relevant part:

> **COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.    Insuring Agreement**
>
> > **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But: . . .

\* \* \*

**b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage

      territory";

   **(2)** The "bodily injury" or "property damage" occurs during  the policy period[.]"

41.     The Policy defines "bodily injury," as amended by Endorsement CG 73 00 10 23, to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. This includes mental anguish resulting from any bodily injury, sickness or disease sustained by a person."

42.     The Policy defines "property damage" as, in part:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

43.     Subject to, among other things, its terms, conditions, retentions, limitations, and exclusions, the Selective Policy's Coverage B ("Coverage B") provides in relevant part:

**COVERAGE B — PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.**     **Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But: . . . .

\* \* \*

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\*        \*        \*

44.    The Policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses:"

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

45.    Coverage B includes exclusions for "Material Published Prior to Policy Period" and "Access or Disclosure of Confidential or Personal Information."

46.    The Material Published Prior to Policy Period Exclusion provides that "[t]his insurance does not apply to:"

**c.  Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

47.    The Selective Policy also includes other exclusions that apply to all of the coverages provided under the Selective Policy, including Coverage B.

-10-

48. The Selective Policy contains an Access or Disclosure of Confidential or Personal Information Exclusion by way of Endorsement CG 21 06 05 14 (the "Access or Disclosure Exclusion").

49. The Access or Disclosure Exclusion provides that "[t]his insurance does not apply to:"

**Access or Disclosure of Confidential or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**Groundbreakers' Claim for Coverage**

50. Groundbreakers tendered the Underlying Lawsuit to Selective, seeking defense and indemnification against the claims asserted in the Underlying Lawsuit under the Selective Policy.

51. By way of correspondence dated June 16, 2025, Selective disputed it had any obligation under the Selective Policy to defend or indemnify Groundbreakers for the claims asserted in the Underlying Lawsuit. Nevertheless, Selective offered to fund the Groundbreakers' defense of the Underlying Lawsuit subject to a full reservation of rights, including the right to bring this declaratory judgment action and to terminate funding the defense and to recoup defense costs.

-11-

## COUNT ONE
### (Declaratory Judgment – Duty to Defend –
### No Coverage Under CGL Insuring Agreement A)

52. Selective hereby repeats and realleges Paragraphs 1 through 51 as if set forth fully herein.

53. An actual and justiciable controversy exists between Selective and the Defendants concerning their respective rights and liabilities under the Selective Policy.

54. Groundbreakers contends that, under the Selective Policy, Selective is obligated to provide Groundbreakers with a defense against the Underlying Lawsuit.

55. Selective contends that it does not have any obligation to defend Groundbreakers for the claims alleged in the TAC because the TAC does not allege facts that, if true, would establish that HoosierVac's injuries fall within the scope of the Selective Policy's Insuring Agreement A coverage grant because, among other things, the TAC does not seek to hold Groundbreakers legally obligated to pay damages because of "bodily injury" or "property damage" arising from an "occurrence."

56. Selective is entitled to a declaration that it owes no duty to defend Groundbreakers against the claims asserted in the Underlying Lawsuit.

## COUNT TWO
### (Declaratory Judgment – Duty to Indemnify –
### No Coverage Under CGL Insuring Agreement A)

57. Selective hereby repeats and realleges Paragraphs 1 through 51 as if fully set forth herein.

58. An actual and justiciable controversy exists between Selective and the Defendants concerning their respective rights and liabilities under the Selective Policy.

59. Groundbreakers contends that, under the Selective Policy, Selective is obligated to provide Groundbreakers with indemnity against the Underlying Lawsuit.

60.     Selective contends that it does not have any obligation to indemnify Groundbreakers for the claims alleged in the Underlying Lawsuit because the TAC does not allege facts that, if true, would establish that HoosierVac's injuries fall within the scope of the Selective Policy's Insuring Agreement A coverage grant because, among other things, the TAC does not seek to hold Groundbreakers legally obligated to pay damages because of "bodily injury" or "property damage" arising from an "occurrence."

61.     Selective is entitled to a declaration that it owes no duty to indemnify Groundbreakers against the claims asserted in the Underlying Lawsuit.

**COUNT THREE**
**(Declaratory Judgment – Duty to Defend –**
**No "Personal and Advertising Injury" Under CGL Insuring Agreement B)**

62.     Selective hereby repeats and realleges Paragraphs 1 through 51 as if set forth fully herein.

63.     An actual and justiciable controversy exists between Selective and the Defendants concerning their respective rights and liabilities under the Selective Policy.

64.     Groundbreakers contends that, under the Selective Policy, Selective is obligated to provide Groundbreakers with a defense against the Underlying Lawsuit.

65.     Selective contends that it does not have any obligation to defend Groundbreakers for the claims alleged in the Underlying Lawsuit because the TAC does not allege facts that, if true, would establish that HoosierVac's injuries fall within the scope of the Selective Policy's definition of "personal and advertising injury."

66.     The Selective Policy does not require Selective to defend Groundbreakers against the claims asserted in the Underlying Lawsuit because it does not allege "personal or advertising

-13-

injury" and even if it did, which it does not, the TAC does not seek damages "because of" any "personal and advertising injury."

67.     Selective is entitled to a declaration that it owes no duty to defend Groundbreakers under Coverage B against the claims asserted in the Underlying Lawsuit.

## COUNT FOUR
### (Declaratory Judgment – Duty to Indemnify – No "Personal and Advertising Injury" Under CGL Insuring Agreement B)

68.     Selective hereby repeats and realleges Paragraphs 1 and 51 as if set forth fully herein.

69.     An actual and justiciable controversy exists between Selective and the Defendants concerning the respective rights and liabilities of Selective and Groundbreakers under the Selective Policy.

70.     Groundbreakers contends that, under the Selective Policy, Selective is obligated to provide Groundbreakers with indemnification against the Underlying Lawsuit.

71.     Selective contends that it does not have any obligation to indemnify Groundbreakers for the claims alleged in the Underlying Lawsuit because the TAC does not allege facts that, if true, would establish that HoosierVac's injuries fall within the scope of the Policy's definition of "personal and advertising injury."

72.     The Selective Policy does not require Selective to indemnify Groundbreakers for the claims asserted in the Underlying Lawsuit because it does not allege "personal or advertising injury" and even if it did, which it does not, the TAC does not seek damages "because of" any "personal and advertising injury."

73.     Selective is entitled to a declaration that it owes no duty to indemnify Groundbreakers under Coverage B for the claims asserted in the Underlying Lawsuit.

## COUNT FIVE
### (Declaratory Judgment – Duty to Defend –
### No "Personal and Advertising Injury" During the Policy Period
### Under CGL Insuring Agreement B)

74.    Selective hereby repeats and realleges Paragraphs 1 through 51 as if set forth fully herein.

75.    An actual and justiciable controversy exists between Selective and the Defendants concerning their respective rights and liabilities under the Selective Policy.

76.    Groundbreakers contends that, under the Selective Policy, Selective is obligated to provide Groundbreakers with a defense against the Underlying Lawsuit.

77.    Selective contends that it does not have any obligation to defend Groundbreakers for the claims alleged in the Underlying Lawsuit because even if the TAC alleged facts that, if true, would establish that HoosierVac's injuries fell within the scope of the Policy's definition of "personal and advertising injury," which it does not, any such "personal and advertising injury" falls outside of the effective dates of the Selective Policy.

78.    Although Paragraph 98 of the TAC alleges that agents of the union defendants Local 103 and Local 150 made "disparaging statements," the TAC does not assert that Groundbreakers made any defamatory statements.

79.    The TAC alleges that following Groundbreakers' and K2's failed acquisition attempts in 2022 and 2023, Defendants engaged in a "campaign of retaliation" that included (i) explicit threats of retaliation by an agent of Local 103, (ii) grievances filed by Locals 103 and 150 for the purpose of harming HoosierVac's business and the market, and (iii) threats and disparaging statements by Locals 103 and 150 to employees and customers of HoosierVac. According to the TAC, all of this conduct began before February 2024.

80. The Coverage B Insuring Agreement of the Selective Policy provides that the Selective Policy "applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period."

81. The Selective Policy does not require Selective to defend Groundbreakers for the claims alleged in the Underlying Lawsuit because the TAC does not allege a "personal and advertising injury," and even if it did, the TAC specifically does not allege "personal and advertising injury" that occurred during the policy period.

82. Selective is entitled to a declaration that it owes no duty to defend Groundbreakers against the claims asserted in the Underlying Lawsuit.

**COUNT SIX**
**(Declaratory Judgment – Duty to Indemnify –**
**No "Personal and Advertising Injury" During the Policy Period**
**Under CGL Insuring Agreement B)**

83. Selective hereby repeats and realleges Paragraphs 1 through 51 as if set forth fully herein.

84. An actual and justiciable controversy exists between Selective and the Defendants concerning their respective rights and liabilities under the Selective Policy.

85. Groundbreakers contends that, under the Selective Policy, Selective is obligated to provide Groundbreakers with indemnity against the Underlying Lawsuit.

86. Selective contends that it does not have any obligation to indemnify Groundbreakers for the claims alleged in the Underlying Lawsuit because even if the TAC alleged facts that, if true, would establish that HoosierVac's injuries fell within the scope of the Policy's definition of "personal and advertising injury," which it does not, any such "personal and advertising injury" falls outside of the effective dates of the Selective Policy.

-16-

87.     Although Paragraph 98 of the TAC alleges that agents of the union defendants Local 103 and Local 150 made "disparaging statements," the TAC does not assert that Groundbreakers made any defamatory statements.

88.     The TAC alleges that following Groundbreakers' and K2's failed acquisition attempts in 2022 and 2023, Defendants engaged in a "campaign of retaliation" that included: (i) explicit threats of retaliation by an agent of Local 103, (ii) grievances filed by Locals 103 and 150 for the purpose of harming HoosierVac's business and the market, and (iii) threats and disparaging statements by Locals 103 and 150 to employees and customers of HoosierVac. According to the TAC, all of this conduct began before February 2024.

89.     The Coverage B Insuring Agreement of the Selective Policy provides that the Selective Policy "applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period."

90.     The Selective Policy does not require Selective to indemnify Groundbreakers for the claims alleged in the Underlying Lawsuit because the TAC does not allege a "personal and advertising injury," and even if it did, the TAC does not allege "personal and advertising injury" that occurred during the policy period.

91.     Selective is entitled to a declaration that it owes no duty to indemnify Groundbreakers for the claims asserted in the Underlying Lawsuit.

<u>**COUNT SEVEN**</u>
**(Declaratory Judgment – Duty to Defend –
Material Published Prior to Policy Period Under CGL Insuring Agreement B)**

92.     Selective hereby repeats and realleges Paragraphs 1 through 51 as if set forth fully herein.

93.    An actual and justiciable controversy exists between Selective and the Defendants concerning their respective rights and liabilities under the Selective Policy.

94.    Groundbreakers contends that, under the Selective Policy, Selective is obligated to provide Groundbreakers with a defense against the Underlying Lawsuit.

95.    Selective contends that it does not have any obligation to defend Groundbreakers for claims alleged in the Underlying Lawsuit because the Material Published Prior to Policy Period Exclusion bars coverage for all of the claims asserted against Groundbreakers in the Underlying Lawsuit.

96.    The Original Complaint filed by HoosierVac and HoosierX, LLC in Indiana State Court alleged that one of the non-insured defendants made defamatory statements as early as June 2023. (Ex. 5, pp. 9-10.)

97.    The TAC does not assert that Groundbreakers made any defamatory statements at all.

98.    The TAC alleges that following Groundbreakers' and K2's failed acquisition attempts in 2022 and 2023, Defendants engaged in a "campaign of retaliation" that included: (i) explicit threats of retaliation by an agent of Local 103, (ii) grievances filed by Locals 103 and 150 for the purpose of harming HoosierVac's business and the market, and (iii) threats and disparaging statements by Locals 103 and 150 to employees and customers of HoosierVac. According to the TAC, all of this conduct began before February 2024.

99.    The Selective Policy does not require Selective to defend Groundbreakers against the claims asserted in the Underlying Lawsuit because the Material Published Prior to Policy Period Exclusion of the Selective Policy excludes coverage for "personal and advertising injury"

"arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period."

100.    Selective is entitled to a declaration that it owes no duty to defend Groundbreakers against the claims asserted in the Underlying Lawsuit.

**COUNT EIGHT**
**(Declaratory Judgment – Duty to Indemnify –**
**Material Published Prior to Policy Period Under CGL Insuring Agreement B)**

101.    Selective hereby repeats and realleges Paragraphs 1 through 51 as if set forth fully herein.

102.    An actual or justiciable controversy exists between Selective and the Defendants concerning their respective rights and liabilities under the Selective Policy.

103.    Groundbreakers contends that, under the Selective Policy, Selective is obligated to provide it with indemnification against the Underlying Lawsuit.

104.    Selective contends that it does not have any obligation to indemnify Groundbreakers for claims alleged in the Underlying Lawsuit because the Material Published Prior to Policy Period Exclusion bars coverage for all of the claims asserted against Groundbreakers in the Underlying Lawsuit.

105.    The Original Complaint filed by the Hoosier Defendants in Indiana State Court alleged that one of the non-insured defendants made defamatory statements as early as June 2023. (Ex. 5, pp. 9-10.)

106.    The TAC does not assert that Groundbreakers made any defamatory statements at all.

107.    The TAC states facts relating to its claims for damages arising out of alleged antitrust violations, including disparaging statements in furtherance of those violations, dating back to "early 2022." (Ex. 2, ¶ 64.)

-19-

108. The TAC alleges that following Groundbreakers' and K2's failed acquisition attempts in 2022 and 2023, Defendants engaged in a "campaign of retaliation" that included: (i) explicit threats of retaliation by an agent of Local 103, (ii) grievances filed by Locals 103 and 150 for the purpose of harming HoosierVac's business and the market, and (iii) threats and disparaging statements by Locals 103 and 150 to employees and customers of HoosierVac. According to the TAC, all of this conduct began before February 2024.

109. The Selective Policy does not require Selective to indemnify Groundbreakers against the claims asserted in the Underlying Lawsuit because the Material Published Prior to Policy Period Exclusion of the Selective Policy excludes coverage for "personal and advertising injury" "arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period."

110. Selective is entitled to a declaration that it owes no duty to indemnify Groundbreakers against the claims asserted in the Underlying Lawsuit.

### COUNT NINE
**(Declaratory Judgment – Duty to Defend --
Access or Disclosure Exclusion Under CGL Insuring Agreement B)**

111. Selective hereby repeats and realleges Paragraphs 1 through 51 as if set forth fully herein.

112. An actual and justiciable controversy exists between Selective and the Defendants concerning their respective rights and liabilities under the Selective Policy.

113. Groundbreakers contends that, under the Selective Policy, Selective is obligated to provide Groundbreakers with a defense against the Underlying Lawsuit.

114. Selective contends that it does not have any obligation to defend Groundbreakers for claims alleged in the Underlying Lawsuit because even if the TAC alleged a "personal and

-20-

advertising injury" during the policy period, which it does not, the Access or Disclosure Exclusion bars coverage for the claims asserted against Groundbreakers in the Underlying Lawsuit.

115.    The TAC alleges that Groundbreakers "recruited and hired HoosierVac's trained operators and other key employees" and "used these former employees to misappropriate HoosierVac's confidential information and trade secrets—including customer lists, pricing data, and proprietary operational techniques—to unfairly compete against HoosierVac." (Ex. 2, ¶ 91.)

116.    The TAC alleges that after the failed acquisition attempts by Groundbreakers and K2 in 2022 and 2023, respectively, Defendants engaged in a coordinated campaign of retaliation "for the purpose of harming HoosierVac's business and the market because HoosierVac refused to disclose proprietary information or otherwise sell to either Groundbreakers or K2." (Ex. 2, ¶¶ 74, 77, 80, 86, 90, 94.)

117.    The Selective Policy does not require Selective to defend Groundbreakers against the claims asserted in the Underlying Lawsuit because the Access or Disclosure Exclusion of the Selective Policy excludes coverage for "personal and advertising injury" "arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, . . . customer lists, . . . or any other type of nonpublic information." Such claims are excluded by the Access or Disclosure Exclusion endorsement, which applies even when "damages are claimed for . . . any . . . loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information."

118.    Selective is entitled to a declaration that it owes no duty to defend Groundbreakers against the claims asserted in the Underlying Lawsuit.

## COUNT TEN
### (Declaratory Judgment – Duty to Indemnify –
### Access or Disclosure Exclusion Under CGL Insuring Agreement B)

119.    Selective hereby repeats and realleges Paragraphs 1 through 51 as if set forth fully herein.

120.    An actual and justiciable controversy exists between Selective and the Defendants concerning their respective rights and liabilities under the Selective Policy.

121.    Groundbreakers contends that, under the Selective Policy, Selective is obligated to provide Groundbreakers with indemnification against the Underlying Lawsuit.

122.    Selective contends that it does not have any obligation to indemnify Groundbreakers for the claims alleged in the Underlying Lawsuit because even if the TAC alleged a "personal and advertising injury," which it does not, the Access or Disclosure Exclusion bars coverage for all of the claims asserted against Groundbreakers in the Underlying Lawsuit.

123.    The TAC alleges that Groundbreakers "recruited and hired HoosierVac's trained operators and other key employees" and "used these former employees to misappropriate HoosierVac's confidential information and trade secrets—including customer lists, pricing data, and proprietary operational techniques—to unfairly compete against HoosierVac." (Ex. 2, ¶ 91.)

124.    The TAC alleges that after the failed acquisition attempts by Groundbreakers and K2 in 2022 and 2023, respectively, Defendants engaged in a coordinated campaign of retaliation "for  the purpose of harming HoosierVac's business and the market because HoosierVac refused to disclose proprietary information or otherwise sell to either Groundbreakers or K2." (Ex. 2, ¶¶ 74, 77, 80, 86, 90, 94.)

125.    The Selective Policy does not require Selective to indemnify Groundbreakers against the claims asserted in the Underlying Lawsuit because the Access or Disclosure Exclusion of the Selective Policy excludes coverage for "personal and advertising injury" "arising out of any

-22-

access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, . . . customer lists, . . . or any other type of nonpublic information." Such claims are excluded by the Access or Disclosure Exclusion endorsement, which applies even when "damages are claimed for . . . any . . . loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information."

126. Selective is entitled to a declaration that it owes no duty to indemnify Groundbreakers against the claims asserted in the Underlying Lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, pursuant to 28 U.S.C. §§ 2201 and 2202, Selective respectfully prays for judgment in its favor as follows:

i) As to Count One, a declaration that the claims asserted in the Underlying Lawsuit do not fall within the scope of coverage of Insuring Agreement A of the Selective Policy and, accordingly, Selective is not obligated to defend Groundbreakers against the Underlying Lawsuit;

ii) As to Count Two, a declaration that the claims asserted in the Underlying Lawsuit do not fall within the scope of coverage of Insuring Agreement A of the Selective Policy and, accordingly, Selective is not obligated to indemnify Groundbreakers against the Underlying Lawsuit;

iii) As to Count Three, a declaration that Selective is not obligated to defend Groundbreakers against the Underlying Lawsuit because the allegations of the TAC do not allege "personal and advertising injury";

iv) As to Count Four, a declaration that Selective is not obligated to indemnify Groundbreakers against the Underlying Lawsuit because the allegations of the TAC do not allege "personal and advertising injury";

v) As to Count Five, a declaration that Selective is not obligated to defend Groundbreakers against the Underlying Lawsuit because the allegations of the TAC do not allege "personal and advertising injury" that occurred during the policy period;

vi) As to Count Six, a declaration that Selective is not obligated to indemnify Groundbreakers against the Underlying Lawsuit because the allegations of

-23-

the TAC do not allege "personal and advertising injury" that occurred during the policy period;

vii) As to Count Seven, a declaration that the Selective Policy's Material Published Prior to Policy Period Exclusion applies to the facts and claims alleged in the Underlying Lawsuit and, accordingly, Selective is not obligated to defend Groundbreakers against the Underlying Lawsuit;

viii) As to Count Eight, a declaration that the Selective Policy's Material Published Prior to Policy Period Exclusion applies to the facts and claims alleged in the Underlying Lawsuit and, accordingly, Selective is not obligated to indemnify Groundbreakers against the Underlying Lawsuit;

ix) As to Count Nine, a declaration that the Selective Policy's Access Or Disclosure Of Confidential Or Personal Information Exclusion applies to the facts and claims alleged in the Underlying Lawsuit and, accordingly, Selective is not obligated to defend Groundbreakers against the Underlying Lawsuit;

x) As to Count Ten, a declaration that the Selective Policy's Access Or Disclosure Of Confidential Or Personal Information Exclusion applies to the facts and claims alleged in the Underlying Lawsuit and, accordingly, Selective is not obligated to indemnify Groundbreakers against the Underlying Lawsuit;

xi) Awarding such other relief as the Court may deem just, equitable, and proper.

Respectfully submitted,

**Selective Insurance Company of America**

/s/__*Dennis M. Dolan*_____
Dennis M. Dolan
Bar No. 34423-45
LITCHFIELD CAVO LLP
3235 45th Street, Suite 302
Highland, IN 46322-3285
Phone: (219) 301-2137
Email: Dolan@LitchfieldCavo.com

/s/ __*Joseph K. Scully*_____
Joseph K. Scully (*pro hac vice*)
RI Bar No. 6217
CT Bar No. 423692
MA Bar No. 644014
jkscully@daypitney.com
225 Asylum Street
Hartford, CT 06103
P: 860-275-0135
F: 860-881-2478

Dated: March 20, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that the participants in the case that are registered CM/ECF users will be served electronically by the CM/ECF system.

*/s/ Joseph K. Scully*
Joseph K. Scully

-25-